CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 3 1 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PANSY EYVONNE BROWN, FOR ) | |
| ILLYA F. BROWN, DECEASED ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.7:08cv003 |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | By: Michael F. Urbanski |
| Commissioner of Social Security, ) | United States Magistrate Judge |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Pansy Eyvonne Brown, on behalf of her deceased husband, Illya F. Brown ("Brown"), brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits and supplemental security income under the Social Security Act (the "Act"). Plaintiff argues on appeal that the Commissioner erred by failing to properly evaluate a psychological evaluation by Pamela Tessnear, Ph.D., obtained after the Administrative Law Judge ("ALJ") rendered his decision but before the Appeals Council denied review of this claim. Plaintiff argues that the Tessnear evaluation constitutes new and material evidence requiring remand of the ALJ's decision. After review of the entire record, the court finds that the Commissioner's decision is supported by substantial evidence and must be affirmed. With respect to the Tessnear evaluation, there is no need for reversal, remand or further administrative review. The evaluation is neither new nor material under Wilkins v. Secretary, Dept. of Health and Human Services, 953 F.2d 93 (4th Cir. 1991), as it contains largely cumulative information and there is no reasonable possibility that this evaluation would have changed the outcome.

**I.**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

2

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the RFC,[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 404.1545(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 404.1529(a).

3

## II.

Brown was born in 1972 and died in 2007, a few months after the ALJ's decision.[2] Brown's education was very limited, completing only the ninth grade, with some special education classes. Brown worked in a wide variety of industrial jobs, generally performing manual labor such as furniture sander, assembler, parts worker and tarp inspector. (R. 66) Brown had a ten year history of low back and knee pain and complained of a stomach disorder, all of which the ALJ found to be severe. The ALJ also found Brown to have borderline intellectual functioning. Despite these severe impairments, the ALJ found that Brown could return to his past relevant work as a sander, assembler and parts worker, and thus was not disabled. (R. 22)

The appeal turns in large measure on whether the case should be remanded for consideration of interim evidence submitted to the Appeals Council in the form of the post-decision psychological evaluation of Dr. Tessnear. The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins, 953 F.2d at 95-96; Williams v. Sullivan, 905 F. 2d 214, 216, n.3 (8th Cir. 1980).

In this case, the Appeals Council did not decide whether the Tessnear evaluation was new or material, and instead declined to consider Dr. Tessnear's evaluation solely because her June 28, 2006 report post-dated the ALJ's decision by one month. The Appeals Council stated:

---

[2] As such, this appeal concerns a closed period of benefits from December 15, 2003 through September 30, 2007.

4

> This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before May 24, 2006. If you want us to consider whether you were disabled after May 24, 2006, you need to apply again. We are returning the evidence to you to use in your new claims.

(R. 7)

Dr. Tessnear was not a treating psychologist, and apparently did not see Brown until June 28, 2006, upon referral from Brown's disability counsel. Dr. Tessnear's psychological evaluation is fairly detailed, and consists of nine single spaced pages. On its face, it is not confined to the one month period following the ALJ's decision. Plainly, it relates to the period before the date of the ALJ's decision.

The question posed on this appeal, therefore, is whether the Tessnear evaluation is new and material evidence requiring a remand. In Wilkins, the Fourth Circuit instructed that "[e]vidence is new within the meaning of this section if it is not duplicative or cumulative," and "[e]vidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." 953 F.2d at 96. In this case, it is clear that the Tessnear evaluation is neither new nor material, and that no remand is appropriate.

The record in this case contains a psychological evaluation from Licensed Clinical Psychologist ("LCP") Bede A.R. Pantaze dated April 11, 2005, a year before the ALJ's disability decision. (R. 177-85) LCP Pantaze reported that Brown was both cooperative and appropriate in his clinical interview. LCP Pantaze noted that Brown was oriented to time, place, person and situation, could comprehend simple commands, and no deficits were observed in attention, concentration or memory. The evaluation stated that Brown was below average both in terms of his intellectual level and fund of information. Brown also displayed mild deficits in abstract

5

thinking. No impairment was noted in simple computational skills. Brown had no unusual aspects of thought content or phobias. The predominant mood was of mild composure with no secondary moods noted or significant cyclic mood swings. LCP Pantaze's report cited no specific interpersonal problems and stated that Brown reported no history of antisocial behavior or legal problems. LCP Pantaze concluded that "[o]verall, Mr. Brown's pattern of interpersonal behavior suggests relatively consistent maturity and adaptation." (R. 180) Under the heading "Functional Information," LCP Pantaze reported the following:

> From a cognitive, mental status point of view, Mr. Brown is capable of doing simple and repetitive tasks but he is also capable of learning some detailed 4-5 step employment tasks if he is shown rather than told what and how to do. He is able to maintain regular attendance in the work place, perform work activities on a consistent basis and complete a normal workday/workweek without interruptions. He is able to accept instructions from supervisors, interact with coworkers and with the public and he is able to deal with the usual stresses encountered in competitive employment. From a mental status point of view his prognosis for employment related activities is very good.

(R. 180) LCP Pantaze concluded that Brown had Borderline Intellectual Functioning, but had a current Global Assessment of Functioning ("GAF") of 70+.[3] On the same date, LCP Pantaze completed a WAIS-III Report, which demonstrated a number of significant weaknesses. LCP Pantaze concluded that "[i]ndividuals of similar intellectual ability usually function best in unskilled or semiskilled occupations, which involve concrete relatively repetitive tasks. Some supervision is usually necessary except for tasks which have been well-practiced." (R. 184)

---

[3] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION (hereinafter "DSM-IV"), 32 (American Psychiatric Association (hereinafter "APA") 1994). A GAF of 61-70 indicates that the individual has mild symptoms in functioning. DSM-IV, 32 (APA 1994). A GAF of 71-80 indicates that the individual has slight, temporary impairments in functioning. DSM-IV, 32 (APA 1994).

6

Dr. Eugenie Hamilton, a state agency psychologist, also evaluated Brown's mental capacity on April 27, 2005, and this evaluation was reviewed and affirmed by another state agency psychologist, Howard Leizer, Ph.D., on June 22, 2005. (R. 193-209) Dr. Hamilton found Brown "Markedly Limited" in no categories on the Mental Residual Functional Capacity Assessment, and "Moderately Limited" in three categories: the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to maintain attention and concentration for extended periods. (R. 193) Dr. Hamilton concluded from a functional capacity standpoint that "[t]his claimant has a MDI [mental development index] of BIF [borderline intellectual functioning] with no other mental impairments. He is assessed as capable of performing simple routine work in a competitive environment." (R. 195) In a Psychiatric Review Technique completed on the same day, Dr. Hamilton noted mild difficulties in maintaining school functioning, moderate restriction in his activities of daily living and moderate difficulties in maintaining concentration, persistence or pace. (R. 207)

There are a few other references to Brown's mental state in the record. The report of the independent medical examination conducted by Dr. William Humphries on April 16, 2005 states that as to mental status, "[h]e is alert an oriented to three spheres. Speech is intelligible and sustained. No aphasia. Behavior is appropriate for this exam. Thought and idea content within normal limits. Memory is intact for recent and remote events. Intelligence is within normal range. Affect and grooming are appropriate for this exam. He should be able to handle his own funds should they be awarded." (R. 188). On the other hand, Dr. Donald E. Yoder, an internist, stated on August 27, 2003 that "[h]e seems to be somewhat limited in his ability to understand and express." (R.142)

7

Based on this information, the ALJ aptly found that Brown's borderline intellectual functioning restricted him "to jobs that require only simple repetitive tasks and do not involve written reports or directions." (R. 21) After hearing evidence from Brown about his work history and from a Vocational Expert ("VE"), the ALJ concluded that Brown could return to his past relevant work as a sander, assembler or parts worker. (R. 22)

The Tessnear evaluation, obtained one month after the ALJ's decision, does not change the disability calculus.[4] Tessnear's evaluation indicates that Brown had one episode of treatment by a psychiatrist long ago, but it was not continued as, in Brown's words, "it wasn't for me." Brown described his depression as sporadic and indicated that he felt nervous around people, especially in groups or stores. Brown has experienced panic attacks in grocery stores and now tries to avoid people. Brown also reported being irritable, restless and having poor concentration. Dr. Tessnear administered the WAIS-III IQ test to Brown, and reported that the scores were very similar to those obtained by LCP Pantaze. Indeed, in her report, Dr. Tessnear offers no criticism of the Pantaze evaluation. On the Mental Status Exam, Dr. Tessnear noted that "Brown displays limited insight, particularly regarding factors that contribute to his problems, though he does acknowledge some need for assistance regarding his expression of anger." On the issue of judgment, Dr. Tessnear noted that "[h]e is able to make reasonable decisions about many activities but has a history of very poor social judgment and impulse control." The testing and examination led Dr. Tessnear to diagnose Brown with intermittent explosive disorder, panic disorder without agoraphobia and borderline intellectual functioning. Dr. Tessnear pegged his

---

[4] The Tessnear evaluation is not found in the administrative record, but rather is attached as an exhibit to plaintiff's summary judgment motion.

8

GAF at 52.[5] Under the category of functional information, Dr. Tessnear made the following observations:

> Mr. Brown would be most successful at simple, repetitive tasks. He can do some multi-step operations if these are modeled for him and do not require abstract reasoning. He needs demonstrations or oral instructions rather than written directions. Concentration is adequate for simple tasks but he cannot maintain focus for complex or detailed activities. His persistence is good but pace is slow, taking much longer than usual to complete tasks on the WAIS-III that require nonverbal problem solving. Because of panic and anxiety, it is expected that work attendance may be uneven. He is very anxious around other people and needs to work alone. He does not accept supervision well and gives a history of assaulting co-workers and supervisors. Because of anxiety and poor anger control, he cannot work with the public. He appears able to deal with routine stress in the workplace, except for those stresses that result from being in groups of people.

Plaintiff argues that the Tessnear evaluation calls into doubt the ALJ's decision because it raises concerns about anger and his ability to work with the public. The court cannot agree. While the Tessnear evaluation raises concerns regarding Brown's ability to work with the public, her evaluation confirmed that Brown could perform substantial gainful activity. The only area where Dr. Tessnear's functional conclusions differ from that of LCP Pantaze is the addition of a limitation concerning working with the public. This limitation would not impact the ALJ's conclusion that Brown could return to his past relevant work as the jobs selected, sander, assembler and parts worker, did not involve any interaction with the public. Indeed, the administrative record reflects substantial development of the demands of Brown's past work both from questions posed to him and the VE. (R. 316-49) In short, the conclusions reached by Dr. Tessnear closely parallel those of LCP Pantaze, with the addition of concern over working with

---

[5] A GAF of 51-60 indicates that the individual has moderate symptoms in functioning. DSM-IV, 32 (APA 1994).

9

the public.[6] As such, much of the Tessnear evaluation is duplicative or cumulative of the evaluation LCP Pantaze, and thus is not new, requiring consideration under Wilkins. To be sure, Dr. Tessnear's functional assessment that Brown not work with the public is new, but because Brown's past relevant work did not involve the public, this new information is not material as there is no reasonable possibility that consideration of it would change the outcome. Wilkins, 953 at 96.[7]

### III.

Brown raises two other arguments on appeal. First, Brown argues that the ALJ made no specific findings concerning the physical and mental demands of his past relevant work, as required by Social Security Ruling 82-62 and the recent opinion of Prim v. Astrue, No. 7:07cv231, 2008 U.S. Dist. LEXIS 11343, W.D. Va. Feb. 13, 2008).

---

[6] The fact that Dr. Tessnear pegged Brown's GAF some twenty points lower than LCP Pantaze does not require a remand. A GAF score is a snapshot of a person's functioning at a particular point in time, and is not a longitudinal indicator of the person's functioning. DSM-IV Text Revision (2000). In its explanation of the Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746 (2000), the Social Security Administration explained:

> To assess current treatment needs and provide a prognosis, medical sources routinely observe and make judgments about an individual's functional abilities and limitations. The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings.

65 Fed. Reg. at 50765-66. Several courts have held that while a GAF score is often an important piece of evidence, it alone is not determinative of social security disability. See Wilkins v. Barnhart, 69 Fed. Appx. 775, 780 (7th Cir. 2003); Lopez v. Barnhart, 78 Fed. Appx. 675 (10th Cir. 2003); Howard v. Comm'r, 276 F.3d 235, 241 (6th Cir. 2002); Ham v. Barnhart, No. 3:01cv368, 2002 U.S. Dist. LEXIS 25438, at *19 (E.D. Va. July 19, 2002).

[7] Plaintiff's argument that this case should be remanded because there was no expert opinion as to whether Brown's impairments were medically equivalent to a listing pursuant to Social Security Ruling 96-6p has no merit as the record contains the opinions of state agency psychologists Hamilton and Leizer, (R. 197-207), and there was no additional medical evidence received that the ALJ or Appeals Council believed may change their opinion. Nor is there any merit to Plaintiff's suggestion that Brown met or was medically equivalent to Listing 12.05, which concerns mental retardation. The testing done by both Dr. Tessnear and LCP Pantaze determined that Brown's IQ score was 72, which represents borderline intellectual functioning, and not mental retardation.

10

SSR 82-62 states the policy and explains the procedure for determining a claimant's ability to do past relevant work. An ALJ must make findings of fact as to the individual's RFC, the physical and mental demands of the former work, and whether the individual's RFC would permit a return to her past job or occupation. In making this determination an ALJ should carefully consider the following evidence:

> (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements;
> (2) medical evidence establishing how the impairment limits the ability to meet the physical and mental requirements of the work; and
> (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

SSR 82-62. The decision of the ALJ must "follow an orderly pattern and show clearly how specific evidence leads to a conclusion." SSR 82-62. "In addition, for a claim involving a mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." SSR 82-62.

In Prim, the court found that the ALJ did not do a sufficient job of developing the record as to whether a person with rather extreme psychological symptoms, including attempted suicide, violent outbursts, and psychiatric hospitalization, could return to work as a powder helper in a munitions plant. In that case, the court found the testimony of the VE as to whether Prim could return to work to be conclusory. Here, in contrast, the testimony at the administrative hearing

11

regarding Brown's work history was anything but conclusory, and consists of some 33 pages. While the ALJ's analysis in the decision is arguably thin as to the requirements of SSR 82-62, the testimony of both Brown and the VE at the hearing paints a very clear picture of Brown's past relevant work and is far from conclusory. In short, the uncertainty of the ALJ's decision in Prim as to whether a person of that claimant's mental state could return to work in a munitions plant is not present here as the VE does a very good job of fleshing out the requirements of Brown's past relevant work. Moreover, the only issue presented by Dr. Tessnear concerns Brown's ability to work with the public, and it is clear from the record that none of the jobs the VE found Brown could return to involved the public.

Second, Plaintiff argues that the ALJ erred in finding that Brown retained the RFC to perform work at the medium level of exertion. Dr. William Humphries, a state agency physician, examined Brown on April 11, 2005 and concluded that he could sit, stand and walk for six hours in an eight hour workday, lifting 50 pounds occasionally and 25 pounds frequently, (R. 186-89), which falls within the range of medium work. See 20 C.F.R. § 404.1567(c); Social Security Ruling 83-10. Dr. Humphries ordered x-rays of Brown's right knee and lumbrosacral spine, which were normal. (R. 190) Another state agency doctor, Richard M. Surrusco, performed a medical records review on Brown on April 25, 2005 and adopted Dr. Humphries' findings, and this review was confirmed by Dr. Michael J. Hartman on June 24, 2005. (R. 210-16) There are no medical opinions in the record stating that Brown cannot work or which are otherwise inconsistent with the opinions of these three physicians.[8] As such, there is plainly substantial evidence in the record to support the ALJ's decision concerning Brown's physical impairments.

---

[8] All of the medical evidence cited by plaintiff in her brief on this issue predate the Humphries/Surrusco/Hartman evaluations and is not suggestive of disabling impairments.

## IV.

For these reasons, the court concludes that plaintiff's motion for summary judgment be denied and defendant's motion for summary judgment be granted. In reaching this conclusion, the court does not suggest that Brown did not experience some impairments and limitations during the closed period of benefits at issue. The objective record simply fails to demonstrate that Brown was disabled from all substantial gainful activity. Review of the administrative record and the additional information provided by Plaintiff makes it clear that the ALJ properly considered all of the evidence in adjudicating Brown's claim for benefits. It follows that all facets of the Commissioner's decision are supported by substantial evidence in this case.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Enter this 31st day of December, 2008.

Michael F. Urbanski
United States Magistrate Judge